IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRANK DAVENPORT,                )
                               )
            Petitioner,         )
                               )
    v.                          )        C.A. No. 19-1146-CFC
                               )
BRIAN EMIG, Warden, and         )
ATTORNEY GENERAL OF THE         )
STATE OF DELAWARE,              )
                               )
            Respondents.        )

—————————————————

Frank Davenport. *Pro se* Petitioner.

Carolyn S. Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

—————————————————

## MEMORANDUM OPINION

June 24, 2025
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Frank Davenport's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2254. (D.I. 1)  The State filed an Answer in opposition and Davenport filed a Reply.  (D.I. 19; D.I. 22)  For the reasons discussed below, the Court denies the Petition.

## I.   BACKGROUND

### A.   Factual Background

> Davenport lived for several years with Holly Wilson, his girlfriend. Evidence was presented that people who knew Wilson thought that Davenport was abusing her, and, in fact, the record reflected that he was charged in 2008 and again in 2009 with offenses related to Wilson—offensive touching and terroristic threatening. The second offense resulted in a no contact order that was still in place during the events at issue in this case. On January 15, 2010, Davenport and Wilson spent part of the night at bars together—in violation of Davenport's no contact order—and, according to testimony presented in the police report, they fought while they were together. After getting home, Wilson was shot. Davenport was at Wilson's home when Wilson was shot and reported it to the police as suicide. Davenport was ultimately charged with Wilson's murder and related charges. He took a plea agreement with the State where he pled no contest to a manslaughter charge and a weapons charge. The State committed to not seek a sentence of greater than ten years. In advance of the sentencing hearing, the State submitted a case summary describing not only the events on the day leading to Wilson's death but also the history of Davenport's relationship with Wilson, pictures of Wilson's body, and home videos of Wilson with her family.

1

*Davenport v. State* (*Davenport I*), No. 690, 2015, 2016 WL 6156170, at *1 (Del. Oct. 21, 2016) (footnotes omitted).

Respondents assert and the cover letter for the State's case summary indicates that the State sent a copy of the case summary to both the Superior Court and defense counsel on November 9, 2015. (D.I. 19 at 15, 16 n.5; D.I. 20-3 at 33) The Superior Court docket indicates that the Court received the case summary on November 13, 2015. (D.I. 20-1 at 18, Entry No. 134) Davenport's counsel, however, indicated he did not receive the case summary until November 19, 2015, one day before the sentencing hearing. (D.I. 1 at 12; D.I. 20-3 at 77, 81)

The case summary stated that the "State is recommending a Sentencing of 10 years Level V and not a day less." (D.I. 20-3 at 44) At the sentencing hearing, Davenport asked for a five-year sentence and the State asked for a ten-year sentence. *See Davenport I*, 2016 WL 6156170, at *1; D.I. 20-3 at 79, 81, 85-85. As acknowledged by Davenport in his plea agreement and at his plea hearing, the manslaughter and possession of a firearm during the commission of a felony (PFDCF) charges to which he pled no contest carried a sentence ranging from a mandatory minimum of five years to a maximum of fifty years. (D.I. 20-3 at 31-32; D.I. 20-7 at 7)

2

## B.    Procedural Background

Davenport was sentenced to a total non-suspended sentence of twenty years incarceration:   for Manslaughter, twenty-five years at Level V, suspended after fifteen years for ten years at Level IV DOC discretion, suspended after six months for two years at Level III GPS; and for PFDCF, five years at Level V, no probation to follow.  (D.I. 20-3 at 88)  Davenport appealed, raising three issues:

> i)    that the State impermissibly breached its plea deal with him by asking the Superior Court to sentence Davenport to no less than the sentence cap to which Davenport and the State agreed;
>
> ii)    that the Superior Court used inaccurate information to sentence Davenport in violation of his due process rights; and
>
> iii)    that the Superior Court impermissibly ordered Davenport to pay restitution to the Victim's Compensation Assistance Program ("VCAP").

*Davenport 1*, 2016 WL 6156170, at *1.  The Delaware Supreme Court affirmed and the United States Supreme Court denied Davenport's subsequent petition for a writ of certiorari.  *See id.*; *Davenport v. Delaware*, 581 U.S. 910 (2017).

Davenport thereafter filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 and a Memorandum in support thereof. (D.I. 20-1 at 19, Entry No. 142; D.I. 20-12 at 25-46)   In his Rule 61 Motion, Davenport raised the following grounds for relief:  (1) the State acted improperly by not delivering a copy of the sentencing packet to defense counsel until the night

3

before sentencing and using "inflammatory" materials and language during the sentencing hearing; (2) the state court sentenced him based on "inaccurate and unverified data," because the State referred to him as homeless, the court considered improper aggravating factors under the state sentencing guidelines, and the court failed to consider forensic evidence in his favor; and (3) defense counsel were ineffective by failing to object to the State's sentencing packet and making decisions without consulting Davenport. *See State v. Davenport* (*Davenport 2*), 2018 WL 3584437, at *1 (Del. Super. Ct. July 24, 2018); D.I. 20-12 at 25-46. The Delaware Superior Court found the first two claims to be procedurally barred, and that the ineffective assistance of trial counsel (IATC) claim failed on the merits. *See id.* The Delaware Supreme Court affirmed. *See Davenport v. State* (*Davenport 3*), No. 428, 2018, 2019 WL 2513771 (Del. June 17, 2019).

Thereafter, Davenport filed the instant Petition. (D.I. 1) This case was stayed pending a decision in *Smack v. Delbalso*, C.A. No. 19-691-LPS, as *Smack* presented a common question of law with respect to Claim 1(a) of the instant Petition. (D.I. 6; D.I. 9) Upon appeal from the decision of this Court, the Third Circuit Court of Appeals issued its decision in *Smack v. Superintendent Mahanoy SCI*, No. 23-1600, 2024 WL 4834230 (3d Cir. Nov. 20, 2024). The stay in this case was thereafter lifted and briefing completed. (D.I. 12; D.I. 19; D.I. 22)

4

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) "to reduce delays in the execution of state and federal criminal sentences

. . . and to further the principles of comity, finality, and federalism." *Woodford v.*

*Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state

prisoner "only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States." 28 U.S.C. § 2254(a).  AEDPA imposes

procedural requirements and standards for analyzing the merits of a habeas petition

"to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *See Bell v. Cone*, 535 U.S. 685, 693

(2002).

### B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

unless the petitioner has exhausted all means of available relief under state law. *See*

28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999);

*Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See, e.g.*, *O'Sullivan*, 526 U.S. at 845.

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See O'Sullivan*, 526 U.S. at 842-48; *Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (stating petitioner meets technical

6

requirements for exhaustion in this situation because state remedies are no longer available). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-65 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d. Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See id.* at 494 (internal quotations omitted).

7

Alternatively, a federal court may excuse a procedural default if a petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. To establish actual innocence, a petitioner must present new, reliable evidence that was not presented at trial showing it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See House v. Bell*, 547 U.S. 518, 536-38 (2006); *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018); *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" if the state court decision finally resolves the claim based on its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d

8

Cir. 2009). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not

9

demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014) (asserting Supreme Court has repeatedly restated holding describing "unreasonable application").

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that § 2254(e)(1)'s clear and convincing evidence standard only pertains to state-court determinations of factual issues and § 2254(d)(2)'s unreasonable standard applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A habeas court cannot supersede the trial court's determination if "[r]easonable minds reviewing the record might disagree" about the

finding in question. *See Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

### D.   Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. A court may deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

When determining whether a state court reasonably applied *Strickland* pursuant to § 2254(d)(1), the Court must review the state court decision through a

11

doubly deferential lens. *See Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *See id.* (internal citations omitted). The question becomes, not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *See id.* at 111-12. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

## III. DISCUSSION

In his timely Petition, Davenport raises the following claims: (1) that his due process rights were violated at the sentencing hearing because (a) the Delaware Superior Court "considered contested sentencing facts and resolved them under the constitutionally insufficient minimal indicia of reliability standard," (D.I. 1 at 18) and (b) "the State failed to disclose its highly inflammatory sentencing memorandum to defense counsel until one day prior to the sentencing hearing;" (D.I. 1 at 37) and (2) the State breached the terms of the plea agreement through its

conduct prior to and during the sentencing hearing by arguing for no less than ten years and implicitly recommending a longer sentence (D.I. 1 at 40-51).

### A. Claim 1: Alleged Due Process Violations

#### 1. Claim 1(a): Minimal Indicia of Reliability Standard

In Claim 1(a), Davenport asserts that the United States Constitution requires that contested sentencing facts be proven by a preponderance of the evidence in state sentencing proceedings and that the Delaware Superior Court violated his due process rights by applying the constitutionally insufficient minimal indicia of reliability standard. (D.I. 1 at 18-37) Davenport concedes that he did not raise this argument at any point in his state court proceedings.[1] (D.I. 1 at 20) Nevertheless, Davenport claims that the claim is "ripe for consideration" because it is both procedurally and factually futile to present the claim to the state courts. (D.I. 1 at 19-22) Respondents acknowledge that requiring Davenport to exhaust Claim 1(a) would be futile because the claim would be procedurally barred if Davenport were to return to the Delaware state courts to raise it. (D.I. 19 at 45-46)

---

[1]    On both direct appeal and in his post-conviction proceedings, Davenport raised claims that he was sentenced based on information that was inaccurate, inflammatory, or lacked a minimal indicia of reliability, but he did not challenge the minimal indicia of reliability standard itself. *See Davenport 1*, 2016 WL 6156170; *Davenport 2*, 2018 WL 3584437; *Davenport 3*, 2019 WL 2513771; D.I. 20-2 at 27-32; D.I. 20-12 at 28, 36-40; D.I. 20-11.

Davenport asserts that this claim would be procedurally barred by Delaware Superior Court Criminal Rule 61(i)(3) for failure to assert it in the proceedings leading to the judgment of conviction and that its presentation would be "factually" futile because of the Delaware Supreme Court's decision in *Smack v. State*, No. 601, 2016, 2017 WL 4548146 (Del. Oct. 11, 2017), which affirmed the use of the minimal indicia of reliability standard when considering facts at a sentencing hearing, and rejected the argument that due process required the use of a preponderance of evidence standard.[2]  (D.I. 1 at 20-22)  Respondents assert that the claim would be barred in a new post-conviction proceeding by Rule 61(i)(1) as time-barred and Rule 61(i)(2) and (d)(2) and as a second or subsequent motion, as well as from appeal by the limitations period in Delaware Supreme Court Rule 6.  (D.I. 19 at 45)

While the parties may disagree as to which specific Delaware rule bars Davenport from bringing his claim, they both nonetheless agree it would be barred. Accordingly, the parties, and the Court, agree that requiring Davenport to exhaust Claim 1(a) would be futile. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (stating exhaustion may be excused if requiring it would be futile, *i.e.*, impossible

---

[2]     Davenport also asserts that the Delaware courts "could" conclude the claim is procedurally barred under Rule 61(i)(4) as formerly adjudicated because the Delaware Supreme Court previously determined "that the contested sentencing facts at issue met the minimal indicia of reliability standard." (D.I. 1 at 20)  It, however, seems unlikely that the Delaware courts would deem a claim admittedly not raised to be one formerly adjudicated.

due to procedural default and state law clearly forecloses review); D.I. 1 at 20-22; D.I. 19 at 46. The claim, however, is procedurally defaulted. *See Coleman,* 501 U.S. at 732, 750; *Lines*, 208 F.3d at 160; *McCandless*, 172 F.3d at 260. To the extent Davenport is attempting to claim that the "factual" futility of bringing his claim due to the Delaware Supreme Court's decision in *Smack* completely excuses exhaustion such that it is not procedurally defaulted, such an argument fails. "[L]ikely futility on the merits . . . in state court of a petitioner's habeas claim does not render that claim 'exhausted' within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition." *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005).

Accordingly, the Court cannot review the merits of this claim absent a showing of cause and prejudice, or unless a miscarriage of justice will result absent such review. Davenport does not identify any cause for his procedural default. To the extent his "factual" futility argument is an attempt to establish cause, such an argument also fails. Futility on the merits cannot constitute cause for a procedurally defaulted claim. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982) (holding that defendant cannot bypass state courts simply because he believes they will be unsympathetic to his claim); *Parker*, 429 F.3d at 63 (citing *Engle* for principle that futility on merits does not constitute cause merely because claim was unacceptable

15

to state court at that particular time). Moreover, *Smack* was not decided until almost one year after Davenport's judgment was affirmed on direct appeal, thus negating any claim that the *Smack* decision itself was a reason for Davenport's failure to raise the issue at sentencing or on direct appeal. Therefore, Davenport has failed to establish cause.

In the absence of cause, the Court does not need to address prejudice. Nevertheless, as this case was stayed pending a decision in *Smack*, the Court will address the Third Circuit's decision to show that Davenport cannot establish prejudice because his argument is without merit. Like Davenport, Smack pleaded guilty and was sentenced within the statutory penalty range under Delaware law. *See Smack*, 2024 WL 4834230, at *1. But unlike Davenport, Smack raised the issue of the appropriate burden of proof to be used at sentencing during his sentencing hearing. *See id.* After briefing by the parties, the Delaware Superior Court concluded that the appropriate burden of proof was the minimal indicia of reliability standard, and the Delaware Supreme Court affirmed that ruling on appeal. *See id.*

Smack thereafter raised the issue in his federal habeas corpus petition, which this Court denied, finding that there was no clearly established federal law determined by the Supreme Court requiring disputed facts be proven by a preponderance of the evidence at a state sentencing hearing. *See id.* The Third Circuit "granted a certificate of appealability regarding the appropriate burden of

16

proof for disputed facts at Smack's state sentencing hearing." *Id.* The Third Circuit distinguished in *Smack* the same cases relied upon by Davenport in this action: *McMillan v. Pennsylvania*,[3] *Nichols v. United States*,[4] and *United States v. Watts*.[5] *See id.* at *2-3. Finding those cases all involved facts that would increase the sentence maximum, the Third Circuit determined that "[t]he holdings of these cases provide no support for Smack's argument that the burden of proof governing sentencing enhancement facts should equally apply to a sentence, like [Smack's], that is within the range established only by his conviction." *See id.* Accordingly, the Third Circuit held Smack could not succeed under the AEDPA because he failed to identify "clearly established federal law" that the state courts declined to apply to his case. *See id.* at *3. The pertinent facts here being the same in all material respects as in *Smack*—*i.e.* the sentence imposed was within the statutory sentencing range and did not include an enhancement—Davenport's claim likewise fails.[6] Davenport, therefore, cannot establish actual prejudice.[7]

---

[3]  477 U.S. 79 (1986).

[4]  511 U.S. 738 (1994).

[5]  519 U.S. 148 (1997).

[6]  While the *Smack* decision is not an opinion of the full Third Circuit Court and, therefore, does not constitute binding precedent, the Court adopts and applies the reasoning therein to reach the same conclusion. *See Smack*, 2024 WL 4834230, at n.*.

[7]  The Court also notes Davenport concedes "the United States Supreme Court has never expressly articulated a minimal burden of proof for contested sentencing facts in a state sentencing proceeding," thus contradicting his own claim of the existence of "clearly established federal law." (D.I. 1 at 26)

The Court further concludes that the miscarriage of justice exception does not apply. Davenport does not assert any grounds raising this exception, and the Court does not discern any. Davenport has not presented any new reliable evidence of his actual innocence.

For these reasons, the Court denies Claim 1(a).

### 2. Claim 1(b): Timeliness of State's Sentencing Memorandum

In Claim 1(b), Davenport alleges that he "was denied due process at his sentencing hearing when the State failed to disclose its highly inflammatory sentencing memorandum to defense counsel until one day prior to the sentencing hearing, thereby significantly impeding defense counsel's ability to offer a rebuttal to the memorandum's factual assertions contested by the defense and considered by the court." (D.I. 1 at 37) Davenport raised Claim 1(b) in his Rule 61 Motion, which the Delaware Superior Court denied as procedurally defaulted under Rule 61(i)(3) due to Davenport's failure to raise the issue in the proceedings leading to the judgment of conviction or on direct appeal. *See Davenport 2*, 2018 WL 3584437, at *1-2. The Delaware Supreme Court affirmed that denial, finding that the Superior Court properly relied on the procedural bar in dismissing the claim. *See Davenport 3*, 2019 WL 2513771, at *2.

By applying the procedural bar of Rule 61(i)(3), the Delaware Superior and Supreme Courts articulated a "plain statement" that the decision rested on state law

18

grounds. *See Harris*, 489 U.S. at 263-64. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule effectuating a procedural default. *See Grimes v. May*, C.A. No. 21-69 (MN), 2024 WL 1328904, at *10 (D. Del. Mar. 28, 2024); *McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998). Consequently, the Court cannot review the merits of Claim 1(b) absent a showing of cause for and actual prejudice resulting from the state procedural default, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Davenport does not assert any reason for his procedural default of Claim 1(b). In his Reply, Davenport makes a blanket statement, unsupported by argument, that his "rights were violated when the Defense Attorney, at the opening of the Sentencing Hearing, failed to request an extension to review the hundreds of pages or to withdraw the Plea Agreement." (D.I. 22 at 3) To the extent this statement is an attempt to blame defense counsel for failing to object to the sentencing memorandum, the argument does not establish cause.

Attorney error can constitute cause for a procedural default if that particular ineffective assistance claim was first presented to the state courts as an independent claim and it was determined that the error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. In his Rule 61 Motion, Davenport presented the issue of whether his trial counsel was ineffective for failing to object

19

to the admission of the State's sentencing memorandum as a whole.    *See*

*Davenport 2*, 2018 WL 3584437, at *3.  Applying the two-prong test established in

*Strickland,* the Delaware Superior Court denied the claim on its merits, finding:

> Trial Counsel made a strategic decision to challenge the substance contained in the State's sentencing packet.  At the sentencing hearing, Trial Counsel stated:
>
>> Our plan was to talk about Mr. Davenport and an appropriate sentence for him and that will still be happening.    However, yesterday morning I received a submission from the State, a case summary.  In it, the State delves into forensics in this case.    When we reviewed the summary the State provided, as well as the exhibits, we could not allow the errors and inaccuracies in the State's summary to go uncorrected.
>
> Trial Counsel's strategy of challenging the substance of the State's sentencing packet, as opposed to objecting to the packet as a whole, was well within the range of reasonableness.  Moreover, [Davenport] cannot establish that he was prejudiced by the sentencing packet when Trial Counsel had the opportunity to respond, and did respond, to the information contained therein.    Therefore, [Davenport] cannot establish that Trial Counsel were ineffective by failing to object to the State's sentencing packet.

*See id.* at *3.

Noting the Delaware Superior Court's application of *Strickland*, the Delaware

Supreme Court affirmed, stating:

> The Superior Court found, and we agree, that trial counsel made a reasonable strategic decision to challenge the information contained in the State's case summary on its

20

merits as opposed to the admission of the summary as a whole. The record reflects that counsel effectively responded to the personal narrative and the forensic information contained in the summary and argued that the court should not consider these factors in sentencing. Trial counsel's decision to challenge the substance of the case summary was objectively reasonable and, in any event, Davenport cannot demonstrate he was prejudiced by trial counsel's strategic decision.

*Davenport 3*, 2019 WL 2513771, at *2-3.

Davenport did not raise this IATC claim in the instant habeas petition. Nevertheless, the Court finds that the record supports the conclusions of the Delaware courts, both of which correctly identified *Strickland* as clearly established federal law and reasonably applied it in determining that Davenport's IATC claim failed on the merits. Davenport acknowledges that trial counsel strategically declined to request a continuance following the late disclosure of the sentencing packet. (D.I. 1 at 38 n.86) "[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *Smith v. Parker*, C.A. No. 22-99 (MN), 2024 WL 4854308, at *8 (D. Del. Nov. 21, 2024) (citing *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)). Viewing the Delaware courts' decisions under the required "doubly deferential" lens, there is more than a reasonable argument that counsel satisfied *Strickland*'s deferential standard. Moreover, the Delaware courts reasonably concluded that Davenport could not

demonstrate prejudice. A review of the transcript from the sentencing hearing supports the finding that trial counsel had the opportunity to and did, in fact, respond to and argue against the contested information contained in the summary. (D.I. 20-3 at 81-86) Therefore, Davenport has failed to show a substantial likelihood of a different outcome but for counsel's performance. Accordingly, trial counsel's performance does not provide cause for Davenport's default of Claim 1(b).

In the absence of cause, the Court need not address the issue of prejudice. Additionally, Davenport's procedural default cannot be excused under the miscarriage of justice exception because he does not assert any grounds raising this exception, nor has he presented any new reliable evidence of his actual innocence. Accordingly, the Court denies Claim 1(b) as procedurally barred.

## B.    Claim 2: Alleged Breach of Plea Agreement

In Claim 2, Davenport asserts that the "State breached the terms of the plea agreement through its pre-sentencing conduct, sentencing presentation and ultimate sentencing recommendations." (D.I. 1 at 40) The essence of Davenport's argument is that the State argued for a sentence of *no less* instead of *no more* than ten years and implicitly recommended a sentence longer than agreed to in the plea agreement by presenting evidence and arguments in the case summary and at the sentencing hearing to "undermine the ten year recommendation." (D.I. 1 at 40-51)

Davenport raised this claim on direct appeal. (D.I. 20-2 at 10-26) The Delaware Supreme Court found that the argument was "not properly presented below and therefore subject only to review for plain error," and also without merit. *See Davenport 1*, 2016 WL 6156170, at *2 (citing Delaware case law that applied procedural bar of Delaware Supreme Court Rule 8 (Rule 8)[8] and plain error standard of review). A similar claim was also raised in Davenport's Rule 61 Motion and the Delaware Supreme Court affirmed the Delaware Superior Court's finding that the claim was procedurally barred by Rule 61(i)(3). *See Davenport 2*, 2018 WL 3584437, at *2, *aff'd*, *Davenport 3*, 2019 WL 2513771, at *2; D.I. 20-12 at 28, 33-35.

The application of the procedural bars of Rule 8 and Rule 61(i)(3) is a "plain statement" that the Delaware courts decisions rested on state law grounds. *See Harris*, 489 U.S. at 263-64; *Morgan v. Pierce*, 83 F. Supp. 3d 563, 569 (D. Del. 2015). This Court has consistently held that Rule 8 is an independent and adequate state procedural rule effectuating a procedural default. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d 2008); *Washington v. May*, C.A. No. 17-601-CFC, 2022 WL 4598510, at *25 (D. Del. Sept. 30, 2022); *Morgan*, 83 F. Supp. 3d at 569. As already

---

[8]    Rule 8 provides that "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Del. Sup. Ct. R. 8.

noted above, *see* III(A)(2), the same holds true for Rule 61(i)(3). Therefore, the Court cannot review Claim 2 absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed.[9]

Davenport does not allege any cause for his procedural default of Claim 2. In the absence of cause, the Court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine is inapplicable. Davenport does not assert any grounds raising this exception, nor does the Court discern any. Accordingly, the Court denies Claim 2 as procedurally barred.

### C.    Davenport's Reply Brief

Although not entirely clear, Davenport may be attempting to raise new claims in his Reply, including but not limited to claims involving alleged prosecutorial misconduct for withholding certain information, speculative arguments regarding the prosecution conspiring with experts, and the constitutionality of Delaware

---

[9]    After finding the claim procedurally barred by Rule 8, the Delaware Supreme Court asserted the claim was also without merit. To the extent that finding amounts to an alternative holding, it nonetheless does not alter this Court's conclusion that the claim is procedurally defaulted. *See Johnson v. Pinchak*, 392 F.3d 551, 557-58 (3d Cir. 2004) (holding federal habeas claim was procedurally defaulted even though state court, after finding claim barred by state procedural rule, referenced merits of claim as alternative holding); *see also Jackson v. Superintendent Somerset SCI*, 713 F. App'x 68, 72 n.2 (3d Cir. 2017) (finding independent and adequate state law doctrine requires effectuating procedural default of federal habeas claim even when state court provides alternative holding on merits of procedurally defaulted claim).

Uniform Rules of Evidence (D.R.E.) "1102(b)."[10]  (D.I. 22)  These issues, however, were not raised in Davenport's petition.  "[A] petitioner's reply to a State's answer is not a proper vehicle for raising new claims or arguments in a federal habeas proceeding that were not raised in the § 2254 petition."  *Turner v. Pierce*, C.A. No. 11-1170-GMS, 2015 WL 4205145, at *2 (D. Del. July 13, 2015); *see also Ramsey v. United States Parole Comm'n*, 840 F.3d 853, 863 n.6 (D.C. Cir. 2016) (stating habeas petitioner does not preserve claim by raising it for first time in reply); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (finding argument first presented in traverse rather than in petition was not properly before district court) (collecting cases from First, Seventh and Ninth Circuits).  Therefore, to the extent the Reply raises any new claims, the Court declines to address them.

To the extent that Davenport's inclusion of arguments involving D.R.E. 1101(b) and the recent United States Supreme Court decision in *Andrew v. White*, 604 U.S. ----, 145 S. Ct. 75 (2025), are intended to supplement Claim 1(a), such arguments are unpersuasive.  First and foremost, the Court reiterates that it found each of the claims presented in Davenport's Petition are procedurally barred.

---

[10]    Davenport refers to Rule 1102(b), sometimes indicating it is part of the D.R.E. and other times "the State of Delaware Superior Court's Sentencing Rule." As best the Court can tell, Davenport's argument concerns D.R.E. 1101(b), which provides that the Rules, except for those concerning privilege, do not apply to sentencing proceedings.  D.R.E. 1102 merely provides the title and citation of the Rules and does not contain a subdivision (b).

Second, neither D.R.E. 1101(b) nor *Andrew* address the appropriate standard of proof for contested sentencing facts in state sentencing proceedings. D.R.E. 1101(b) identifies proceedings, including sentencing, in which the rules are not applicable, but does not establish the burden of proof to be used in sentencing proceedings. At issue before the United States Supreme Court in *Andrew* was whether, under "clearly established Federal law," "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *See Andrew*, 145 S. Ct. at 78-83. The Supreme Court held that it did. *See id.* The appropriate burden of proof applicable to contested facts in a state sentencing proceeding was not at issue nor was it addressed in *Andrew*. Accordingly, the decision in *Andrew* does not conflict with the Third Circuit's decision in *Smack* or alter the Court's conclusion in this matter.

## IV.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying

constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed above, the Court denies the instant Petition without an evidentiary hearing and without issuing a certificate of appealability.[11]

The Court will issue an Order consistent with this Memorandum Opinion.

---

[11]    As an alternative "Prayer for Relief" and in the body of his Petition, Davenport requests an opportunity to fully brief his claims. (D.I. 1 at 4, 52) Contrary to the claim that his "fact petition … does not contain extended legal argument or extensive case law authority," the Petition contains both factual and legal argument and authority. (D.I. 1 at 4) Moreover, after the stay was lifted, the Court set a briefing schedule and Davenport had the opportunity and, in fact, did file a Reply in which he provided additional argument and authority. (D.I. 12; D.I. 14; D.I. 18; D.I. 19; D.I. 22)